**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION**

| | |
|---|---|
| Peggy Thomasson, individually and on behalf of all other similarly-situated individuals,<br><br>　　　　　　　　Plaintiff,<br><br>　vs.<br><br>Medac, Inc., Bijon Memar, Individually and MiraMed Global Services, Inc.,<br><br>　　　　　　　　Defendants. | C/A No.　1:20-2287-JFA<br><br>**COMPLAINT**<br>(Jury Trial Demanded) |

Peggy Thomasson, individually and on behalf of all other similarly-situated individuals, by way of this Complaint in the above-captioned matter, would allege and show unto this Honorable Court the following:

**NATURE OF THE ACTION**

1. Peggy Thomasson worked for Defendant Medac, Inc. ("Medac") as a Data Entry Specialist for almost thirteen years. Defendant Medac is owned and operated by Defendant Bijon Memar ("Memar"). Medac is a subsidiary of Defendant MiraMed Global Services, Inc. ("MiraMed"). Thomasson regularly worked and was not paid for overtime. Defendants classified Thomasson as an independent contractor until May 5, 2019, when Defendants reclassified Thomasson as an employee but did not change any of her job duties. While Thomasson was classified as an independent contractor, Defendants refused to grant her any Family Medical Leave Act leave or to grant her other employee benefits such as health insurance, short-term disability benefits, long-term disability benefits, life insurance, unemployment benefits, workers' compensation

1

protection, and the like. Defendants willfully and intentionally mischaracterized Thomasson and other similarly-situated persons as independent contractors rather than employees. This is an action brought individually and as a collective action for unpaid overtime compensation, liquidated damages, attorney's fees, and for other relief under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et. seq. ("FLSA"). The collective action provisions under the FLSA provide for opt-in class participation.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Peggy Thomasson is a citizen and resident of Edgefield County, South Carolina.

3. Defendant Medac is a Georgia corporation doing business in Aiken County, South Carolina.

4. Medac's principal place of business is in North Augusta, South Carolina.

5. Medac is registered with the Secretary of State of South Carolina to do business in this state.

6. Medac was founded, and is owned, and operated by Defendant Memar.

7. Memar is a citizen and resident of Fulton County, Georgia.

8. Defendant MiraMed is a Michigan corporation doing business in Aiken County as Defendant Medac is a subsidiary of MiraMed.

9. Plaintiff brings this action individually and as an opt-in, collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all individuals employed by Defendants at any time within the three years prior to joining this lawsuit, who were non-exempt employees and who worked in excess of forty (40) hours in any given work

2

week, but who did not receive overtime compensation of at least one and a half times their regular hourly wage for any and all overtime hours.

10. Upon information and belief, this action satisfies the requirements of Rule 23(a), Fed. Civ. P., as alleged in the following particulars:

    a. The proposed Plaintiff class is so numerous that joinder of all individual members in this action is impracticable;

    b. There are questions of law and/or fact common to the members of the proposed Plaintiff class;

    c. The claims of Plaintiff, the representative of the proposed Plaintiff class, are typical of the claims of the proposed Plaintiff class; and

    d. Plaintiff, the representative of the proposed Plaintiff class, will fairly and adequately protect the interests of the class.

11. In addition, upon information and belief, this action satisfies one or more of the requirements of Rule 23(b), Fed. R. Civ. P., because the questions of law and/or fact common to the members of the proposed Plaintiff class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

12. Upon information and belief, Defendants have employed numerous personnel in the past three years.

13. Upon information and belief, some or all of the personnel that Defendants contract to provide data entry to its clients have been mischaracterized as independent contractors.

14. Upon information and belief, many, if not all, of the mischaracterized employees frequently work over 40 hours a week and are not paid time and a half, as required by law.

15. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 29 U.S.C. § 216(b), because this action is based, in part, on the FLSA.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Medac's principal place of business is located within this judicial district and division, and the majority of unlawful labor practices giving rise to Plaintiff's claims were committed in the Aiken Division of this Court.

## **FACTS**

17. Defendant Medac describes itself as "one of the nation's largest, independently owned, anesthesia revenue cycle management companies, dedicated exclusively to anesthesia and pain management."  (Medac Website www.medac.com, June 9, 2020.)

Medac provides billing services to anesthesiology practices throughout the United States.  Medac's headquarters are located in North Augusta, South Carolina.

18. Defendant MiraMed describes itself as "as a premier global provider of business process outsourcing solutions to healthcare organizations nationwide."  (MiraMed Website www.miramedgs.com, June 9, 2020.)  MiraMed's headquarters are located in Jackson, Michigan.

19. Defendant Memar founded Medac in 1992 and continues to operate as its Chief Executive Officer.

20. Defendants misclassified their staff, who were entitled to employee rights, including overtime pay, healthcare insurance, Family Medical Leave Act protection, workers' compensation benefits, and other employee benefits such as short-term disability benefits, long-term disability benefits, life insurance benefits, accidental death and dismemberment benefits, retirement and pension benefits, unemployment benefits, matching payroll taxes, paid time off, holidays, funeral leave, civil leave for jury service, etc.

21. Upon information and belief, staff who worked for Defendant Medac did not receive credit through the Social Security Administration for quarters worked; thus, employees did not accrue Social Security credit.

22. Plaintiff began working for Defendants as a data entry specialist in October 2006.

23. At the time of her hire, Plaintiff had no experience in data entry or medical billing or coding.

24. At the time of her hire, Plaintiff was trained for her position by another person who worked for Defendants as an ostensible "independent contractor."

25. At the time of her hire, Plaintiff was told by Defendants that her position was an independent contractor position and was asked to sign a document acknowledging that she was an ostensible "independent contractor."

26. From the time of her hire until May 5, 2019 (the "Misclassification Period"), Defendants maintained to Plaintiff that Plaintiff was an independent contractor.

27. Plaintiff's duties during the entire time she worked for Defendants were performed at her home.

28. Plaintiff's duties during the entire time she worked for Defendant were to perform data entry functions on the computer. Specifically, Plaintiff reviewed scanned patient case documents ("Cases") on the computer which contained patient information, procedure information, and health insurance information, and entered that information on Medac's computer program.

29. Plaintiff's duties did not require any independent judgment to perform.

30. While Plaintiff worked for Defendants, she was required to have "open communication" by telephone with her supervisors at all times and was required to respond to her supervisors immediately upon request.

31. While Plaintiff worked for Defendants, her work was monitored daily by Defendants.

32. If there were errors in Plaintiff's work, she was required to fix those errors immediately for no extra compensation.

33. During the Misclassification Period, Defendants paid Plaintiff $0.55 to $0.58 per Case completed. Plaintiff's pay was non-negotiable and determined solely by Defendants.

34. During the Misclassification Period, Defendants required Plaintiff to meet weekly production goals in order to maintain her position. Specifically, Defendants required that Plaintiff complete data entry on 500 Cases per week.

35. During the Misclassification Period, Plaintiff regularly completed data entry on about 850 Cases per week.

36. Plaintiff and other members of Plaintiff class consistently worked over forty (40) hours a week.

37. Plaintiff regularly worked 60-70 hours per work for Defendants during the Misclassification Period in order to complete data entry on approximately 850 Cases per week.

38. The position held by Plaintiff was an integral part of Defendant Medac's services.

39. Defendant Medac relied upon the work of Plaintiff to provide medical billing services to its clients.

40. Initially during the Misclassification Period, Plaintiff used her own computer while working for Defendants. However, in about 2017, Defendants provided Plaintiff with a computer, docking station, and earpiece. Plaintiff also provided her own internet access and cell phone initially, but was eventually given a phone extension by Defendants which would ring through her computer.

41. During the Misclassification Period, Plaintiff was occasionally required to attend mandatory meetings over the phone and in person, for which she was never compensated.

42. On or about May 5, 2019, Defendants designated Plaintiff as an employee and began paying her an hourly wage of $14.42 per hour.

43. Defendant Memar established Plaintiff's wage as an employee after Plaintiff asked him directly to pay her $14.42 per hour.

44. Upon information and belief, Defendants reclassified Plaintiff an employee on or about May 5, 2019 because Defendant Medac was merging with another company.

45. Upon information and belief, Defendants reclassified all its workers who had previously been classified as independent contractors as employees on or about May 5, 2019.

46. Even though Defendants designated Plaintiff as an employee instead of an independent contractor, Defendants did not change any of Plaintiff's job duties.

47. After May 5, 2019, Defendants continued to require Plaintiff to complete 500 Cases per week.

48. After May 5, 2019, Defendants continued to supervise Plaintiff in the same way she had been supervised during the Misclassification Period.

49. After May 5, 2019, Plaintiff generally worked 40 hours a week, generally completed 500 Cases per week within those 40 hours a week.

50. After May 5, 2019, Defendants paid Plaintiff for any overtime she incurred.

51. Plaintiff worked for Defendants until September 27, 2019, when she was terminated by Defendants.

52. Plaintiff was told at the time of her termination that her termination was the "result of a review of our organizational structure and the economic cost/benefit analysis of your position."

53. Upon information and belief, Defendants now use workers in India to perform the work Plaintiff used to perform for Defendants.

54. Upon information and belief, the circumstances described above regarding Plaintiff's employment are also applicable to Plaintiff class.

**FOR A FIRST CAUSE OF ACTION**
**(AS TO ALL DEFENDANTS)**
(Fair Labor Standards Act—Failure to Pay Overtime Wages)
(Individual and Collective Action, 29 U.S.C. § 201 *et seq.*)

55. All prior allegations not inconsistent herewith are hereby realleged as fully and effectually as is set forth herein verbatim.

56. Defendant Medac is an "employer" for purposes of the FLSA, 29 U.S.C. § 203(d).

57. Defendant MiraMed is an "employer" for purposes of the FLSA, 29 U.S.C. § 203(d).

58. Defendant Memar is an "employer" for purposes of the FLSA, 29 U.S.C. § 203(d).

59. Plaintiff and the members of Plaintiff class were employees of Defendants for purposes of the FLSA during all times relevant to this Complaint. Plaintiff was not exempt from receiving the FLSA overtime benefits, because Plaintiff's position did not meet criteria for an "executive," "administrative," or "professional" employee exemption, as those terms are defined under the FLSA. *See* 29 C.F.R. 213 (a)(1). Said class includes but is not limited to Defendants' staff including but not limited to data entry specialists and such individuals who performed similar duties, etc.

60. The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty (40) hours in a workweek. *See* 29 U.S.C. § 207(a).

61. Defendants failed to pay Plaintiff and the members of Plaintiff class at the rate of one and one-half times their normal rate of pay for all hours worked in excess of forty (40) hours in a workweek.

62. During all times relevant to this complaint, Defendants repeatedly violated the FLSA with respect to Plaintiff and members of Plaintiff class by failing to compensate Plaintiff and members of Plaintiff class at the rate of one and one-half times Plaintiff and members of Plaintiff's class for all hours worked in excess of forty (40) hours in a workweek.

63. Plaintiff and members of Plaintiff class are also entitled to an award of back pay at their regular hourly rate or their overtime rate, as appropriate compensation for all time spent in working for Defendants, which was wrongfully excluded by Defendants in calculating their compensation.

64. The failure of Defendants to compensate Plaintiff and members of Plaintiff class for overtime work, as required by the FLSA was knowing, willful, intentional, and done in bad faith.

65. Plaintiff and members of Plaintiff class are entitled to liquidated damages equal to the amount of overtime compensation and unpaid compensation due to them under the FLSA, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

66. The work and pay records of Plaintiff and members of Plaintiff's class are in the possession, custody, and/or control of Defendants, and Defendants are under a duty pursuant to Section 11(c) of the FLSA, 29 U.S.C. § 211(c), and pursuant to regulations of the United States Department of Labor to maintain and preserve such payroll and other employment records from which the amount of Defendants' liability can be ascertained. Plaintiff requests an order of this Court requiring Defendants to preserve such records during the pendency of this action.

67. Plaintiff and members of Plaintiff class are also entitled to an award of reasonable attorney's fees and costs incurred in prosecuting this action, pursuant 29 U.S.C. § 216(b).

WHEREFORE, having fully set forth their allegations against Defendants, Plaintiff respectfully requests that the Court enter judgment for the following relief:

a. An order authorizing the sending of appropriate notice to current and former employees of Defendants staff who are potential members of the collective action under the FLSA;

b. A declaratory judgment that Defendants have willfully and in bad faith violated the overtime compensation provisions of the FLSA, and have deprived Plaintiff and the members of the Plaintiff class of their rights to such compensation;

c. An order requiring Defendants to provide a complete and accurate accounting of all the overtime compensation and other compensation to which Plaintiff and the members of the Plaintiff class are entitled;

d. An award of monetary damages to Plaintiff and the members of the Plaintiff class in the form of back pay for overtime compensation and other compensation due, together with liquidated damages in an equal amount;

e. Pre-judgment interest;

f. An order certifying a class action under Rule 23 of the Federal Rules of Civil Procedure to remedy the class-wide violations of the South Carolina Payment of Wages Act;

g. Attorney's fees and costs; and,

    h. Such further relief as the Court deems just and proper.

Respectfully Submitted,

          By: s/ Sarah J.M. Cox
          Nekki Shutt (Fed. Bar No. 6530)
          Janet Rhodes (Fed. Bar No. 10521)
          Sarah J.M. Cox (Fed. Bar No. 13166)
          BURNETTE SHUTT & MCDANIEL, PA
          PO Box 1929
          Columbia, South Carolina 29202
          Tel. (803) 904-7930
          Fax (803) 904-7910
          NShutt@BurnetteShutt.Law
          JRhodes@BurnetteShutt.Law
          SCox@BurnetteShutt.Law

          ***ATTORNEYS FOR PLAINTIFF***

Columbia, South Carolina

June 17, 2020